I'd like to reserve five minutes if I could. One of the things that may have gotten a little obscured in the briefing in this case is the fact that the bad faith occurred at the outset of… Can we talk about that for a second? I think that the briefing bifurcates this case, and I thought it was more helpful to think of it in thirds. There's a middle chunk of time there where the insurance company was relying on a superior court ruling, and I find it helpful to take that out of there and look earlier and later, and so I'm just telling you for purposes of your argument, my notes look at the earlier period as before the superior court ruling. Well, let me explain, and maybe this will change your mind about the divisions, why it is that the emphasis upon the erroneous summary judgment ruling is really kind of misplaced and that the bad faith throughout incurs at the inception. And continues until… And continues… For the whole program, then. Right to today. Okay, all right. Why? Let's suppose… Well, let's suppose two scenarios. One, had the National Union simply advised of the conflict, done nothing more. Maybe they didn't provide cumulus counsel. All they said is, Ms. Bamberger, we're taking the position of Marsh that there's no coverage, but you're… Can I ask you a factual question before you continue, because I've gotten a little bit lost in the details of this. Your client had counsel, and that counsel was provided by a different insurer. Am I wrong about that? That is correct. She was defended under a $100,000 policy from the auto club. Okay. So she… She had counsel from the get-go, so I'm having difficulty seeing why there's any damage arising from this issue about the appointment of counsel, conflict counsel, or any other kind of counsel, because she had a lawyer. Well, it's not cumulus counsel or coverage counsel per se. It's the lack of knowledge that she needed coverage counsel, whether she was entitled to a cumulus appointment. What does that mean? I don't know what that means. What does that mean? Lack of knowledge that she was a potential insured? That's one thing. And that she was a potential insured, and that National Union, via Marsh, was taking a position in the litigation which would, A, destroy her coverage. She knew that. She knew that. She opposed the motion. She didn't know. She did not know that that issue went to the existence of coverage under a policy of which she was ignorant. Now, she was ultimately… Wait, wait, wait. So as for the policy of which she was ignorant, I think you've got a point. She was not aware. Wait. Hold on. Hold on. The question, please. If you can just help me, because you're, I think, conflating some things. And maybe you can… I'll give you a chance to respond. As for giving her notice, I think California law says if the insurer has reason to know that she doesn't know that she's a potential coverage, they have to tell her that. But their response, as you know, is in discovery, they disclosed the existence of the policy. So how are they, insurer, in a position to know she doesn't know that she's a potential coverage? They did not disclose… Well, two things. They did not disclose that she was an additional insured under that policy. In fact, they denied it. That was… They gave her… In essence, but they didn't give her the policy. But secondly… No. How have they disclosed it to her? That was my question, which you have not answered. They disclosed to her that Marsh was insured under a national union policy. And so my question is, I think you've got California law, and I just want to, in fairness, give you a chance to respond, but I think you've got California law that says if they have reason to know that they have an insured or a potential insured, I give you that, who doesn't know that she may be covered, they have to tell her that. But they gave, they disclosed the existence of that policy in discovery, didn't they? They disclosed the existence of a policy which covered Marsh. They did not say, indicate that there was any additional coverage for her if she was in the course and scope of employment. So is it your position, then, that they have, in addition to disclosing the policy, they have to actually inform her, hey, we're going to read it for you. You might be in a potential insured, even though she was represented? In this case, they certainly did.  Because they took an adverse position to her from the outset of this case. They knew she was represented. They knew she was represented. They took the position that she was not in the course and scope. That was the very issue which determined coverage. But they didn't tell her that they were, in fact, taking this adverse position. But she was represented. Her lawyer knew that and opposed the motion. Her lawyer didn't know that there was coverage, and therefore, they didn't get coverage counsel, and had they been advised there was a coverage issue, they would have brought in some attorney or some attorney would have recognized that there was a need to make a demand on National Union. They're going to get up and say that her lawyer had notice of the policy and didn't get the policy, didn't request it. So what is, in fairness, what is your response to that? Well, my coverage is that she was represented by a lawyer who was hired to defend her against Moratti, not against National Union. I have a different set of questions. As I understand it, and again, please correct me if I'm wrong, your client was ultimately reimbursed by the defendant insurance company, is that true? Reimbursed for out-of-pocket expenses and for the amount she put into the settlement herself. Okay, so she was made, she had a lawyer from the get-go from a different insurance company. She was reimbursed for everything. So her damages are what? Why are we here? Her damages were here for the emotional distress damages and the general damages from the disruption of her, were here for bad faith because she was subjected to the threat of an enormous personal loss and because she was, in fact, required to put up her own money because National Union decided to gamble with the insured's money rather than its own money. Right, which is why they had to pay the economic damages. And I fully appreciate that there was no doubt, many sleepless nights, this took many, many months and she had to take out a mortgage, I think a second mortgage, and I understand that and don't want to minimize it, but what about the findings the judge made at the bench trial regarding that? Ah, I love that. I'm glad you brought us to that. He made essentially two kinds of findings, and I don't disagree with the facts, but the conclusions are quite different from those he drew. One, he said that National Union was focused on defending its client Marsh. National Union was focused on its own interest in defending the remaining Moratti case. National Union was not focused on Bamberger. True enough, but that is sort of the definition of bad faith. One of the definitions of bad faith is that the insured, insurer does not take into account with the same weight the interest of its insurer. I don't think it is the definition. I think the definition under California law is conscious and deliberate act to frustrate Bamberger's contractual rights. California law also says that it is a failure by the insurer to give equal weight to the interest of its insured. Is there any California law that says they have to give equal weight to the insured and a potential insured? They have to give exactly equal weight to additional insureds, and which she was, of course. So that triggered when the California Supreme Court ruled? Yes. Because they had that middle period of time where they were relying on the Superior Court judgment, right? Yes. I have trouble seeing why it wouldn't be good faith to take the position that she was on a frolic and detour of her own when that's what the California Superior Court thought, and we'd have to say the judge was quite unreasonable for that not to be a position that could be taken in good faith. One of my favorite cases is cited in the reply brief is Lombardo v. Heusentraut, I think it's pronounced, and in that case, the California Court of Appeals says the foreseeability of trial error is evidenced by the existence of courts of appeal. So, your existence kind of refutes that argument, but the real issue, what really deals with that issue is the fact that there was existence, not as a matter of, not because there was some triable issue, there was coverage as a matter of law, and there was coverage as a matter of law based upon existing case law, not new case law. What I want to, I'm following up on your comment earlier about the findings of fact after the bench trial, the last of them, I know you dispute because it's a sort of conclusion that the court finds that National Union did not violate the implied covenant of good faith and fair dealing, but with respect to the remaining findings of fact, are there any that, in your view, are not supported or that are clearly erroneous? Well, there's one that's clearly just speculative, and that is that National Union had... Which paragraph? I don't recall this paragraph, but what he says, he says, National Union had an incentive to treat Bamberger well because it wanted her to testify in the remaining trial. Well, it... And that's clearly erroneous because why? Well, it's speculative because it's just as likely they had an incentive not to tell her that they'd thrown her under the bus and not to alert her to the fact that they had breached a duty to her and not to make her angry, so I don't think that follows from anything in the case. Are there any other findings of fact that, in your view, are clearly erroneous? Well, yes, in the sense that the conclusion that the court drew doesn't follow from the statement. That's a different question. The remaining findings are essentially that National Union knew, they knew about the decision, they were surprised about it, they knew about the settlement, they knew that Bamberger had had to put in her own money, and they knew all the facts that constituted a breach of duty, and yet they did not connect those in their mind and therefore did not recognize that they had breached a duty and therefore did nothing about it. I had been hoping for an identification of a paragraph that was not supported by the evidence, but I understand the more general point. However, I've got a different question to ask you, and it's important to me. All the policies, and pretty much all liability policies, at least in automobile cases, require a tender. She didn't tender. Now, a failure to tender could be because of ignorance. However, she had counsel from the beginning of the case, and even if she was personally ignorant, counsel would always know of a possibility of other insurance coverage. That would be why he requested the National Union policy. Lack of a tender is often on purpose because when you do tender, then the duty to defend applies and that entails the power to control the defense, and it would be a great nuisance and a risk to Bamberger if National Union controlled her defense as opposed to a lawyer who owed no duty to anybody but her. No, this is not an uncommon situation in California law, and the rule is that when the insurer declares a conflict, the insurer takes over control of that case, takes over control of the strategy and tactics in that case in order to prevent the insurer from doing just that, from influencing the manner in which the case is defended. But they did control of the defense because she had a full provision of defense by her primary insurer. Yeah, but this case is not really about . . . She had no risk of being on the hook to her lawyer, that her insurance company was paying her lawyer. Well, yes, that's true. She had a defense, and this case is not about failure to defend.  But they did control . . . They also insured Marsh, and Marsh was going to take that position, right? They owed it to Marsh to take that position. They owed it to Marsh, but what would have happened had they just said, we're taking an adverse position, we're declaring a conflict . . . What would have happened? They wouldn't have . . . Maybe they wouldn't have had to provide a defense, or maybe not, they would have had to provide cumulus counsel, but at least at that point in time, the Bamberger or Bamberger's attorney would have known to make a demand on to settle the case because this was a clear, clearly in excess of coverage, in excess of her $100,000 underlying policy, in excess of her excess policy. They would have been in a position to say, you know, you've got to settle this because California law says you're supposed to gamble with your own money, even if there's a dispute over coverage. They didn't, and that's to Judge Graber's point. So when this came to light, they wrote a check quickly, right, and they needed to write a But how is she harmed in a way that is compensable here? She was subjected to the threat, first of all, the threat of personal liability, and secondly, she was in fact made personally liable as a result of her settlement, and this is . . . So your first point is she suffered non-economic damages, and your second is that she suffered economic damages, but they paid the economic damages, right? Well, actually, they didn't fully pay the economic damages because she had to hire us, she had to hire attorneys to get it, so that goes to the brand fees. I don't see why she wasn't in a position to demand contribution to a potential settlement even before National Union received a tender from her. She had a lawyer. Her lawyer knew from the get-go that Marsh had liability insurance. Since Marsh is a corporation, it can't act by itself only through its employees and agents, so her lawyer would know that employees and agents would be covered and would be in a position to make a demand for contribution even before he saw the policy. The whole point of the course and scope issue, the course and scope defense, was that Marsh had no responsibility to do any of that. Sure, but her lawyer didn't have to accept that. Her lawyer could write the ordinary letter that says, we think you're on the hook because we think she was in a course and scope, and we think we can defend this for . . . or we think we can settle this for an amount that's more than her primary insurance limit, but well within your limits, you have to contribute. Her lawyer . . . Instead, you set them up for bad faith. Her lawyer did oppose the motion for summary judgment on the ground. But that's not the same. He didn't make a tender. I understand it's not the same as a demand. He didn't make a tender or a demand. Is that right? That is correct. That's what I'm asking about. Let me direct your attention to a case, Ramirez v. Sturdivant, which kind of addresses that, in which they say, you know, we're not going to let you off the hook because the attorney for the counsel just didn't quite do everything that would force the insurer into assuming their duties. That's the ordinary way you set insurers up for excesses. You make a tender and a demand. Counsel, you're over your time, but we've asked you a lot of questions, so when the time comes, you can have a minute for rebuttal. Good morning, Your Honor. It's Daniel Gonzalez for the Appellee National Union. Your Honor, I agree with you that one helpful way of approaching this case is to divide the timeline into three parts, and I think initially I was going to start with the third one and sort of work backwards, but I'm going to start with the first one because I think that was the one that you were most interested in, and I think it's important to keep in named Marsh as a defendant, and National Union found out about this lawsuit for the first time. Bamberger had already been in the action for several months, and during that time, as you know, the Auto Club had provided her with defense counsel, and she had also obtained her asset protection lawyer. And under counsel— At my expense, I think. Yes. Yes, I understand. For which I believe she's been reimbursed. But as a result, and under California law, her automobile insurer was principally responsible. So as a result, there was no duty or need for National Union to provide Bamberger with a defense. She had an independent— So let's not talk about that because I think you win that point. But there is California law that talks about needing to treat insureds equally, and she was a potential insured, and she's a potential insured not in any kind of remote sense. She was obviously a potential insured, and wasn't notified of that. What is your response to the failure to notify her of this? It's quite extraordinary. Well, I don't believe that it's California law, at least I'm not aware of any California case, which has said that an insurer has a duty to unilaterally reach out to someone who may be covered and may at some point tender a claim. Well, there is California law that talks about the duty to inform an insured of benefits if the insured doesn't know about those benefits. Oh, that I understand, Your Honor. Yes. Well, okay, but it's not like she's a member of some kind of a difficult-to-identify class. I mean, is the car automobile accident? She's right in the smack dab middle of it, and she was Marsh's employee or not, right, at the time of the accident. So, you know, I'm troubled by the fact that they didn't notify her, and I just want to put that out there and let you respond to it. Okay. I don't believe there's any case where the California courts have recognized a duty to Once the tender is made, then it is understandable that the insurer has duties. I will grant you that. I will grant you that, absolutely. Okay. But it is, he's asking us to make new law, I believe, but it's not a terrible stretch because in this case it was pretty clear that she was a potential insured, right? And if you don't know about the existence of the policy, it's pretty tough to tender. Are you relying on the fact that the policy was disclosed in discovery, or what is your Well, I think that's an important factor. It was disclosed in discovery early on, I believe. Can you tell me how far in it was disclosed? I think, actually, maybe I have it in a timeline. The disclosure is, the responses to interrogatories are in the record. It obviously would have been after Marsh was brought into the case, and presumably before the trial judge's summary judgment order. Okay. Yes. Now, Your Honor, I guess, I think Your Honor put your finger on it, and I think the other side is asking this court to make new law for the state of California. And I think, I hope I'm not presuming, but I think it's this court's responsibility to interpret the law. Well, we're supposed to do what we think they would do. What they would do, correct. And we need the Ouija board today, but what's your best take on this? Well, I think that, Your Honor, it's important to understand that a tender of a claim is not sort of a pointless formality in the insurance business. It is the important first step in the process by which, or under which, the insurance industry will acknowledge, recognize, and handle claims of insurers. And the, so far as the insurers are concerned, it's that tender that sets everything in motion. Well, it almost sounds, I mean, if we follow the logic of your argument, it sounds as if there's a mistake in the handling of this whole matter from the beginning, it may be that her initial lawyer was mistaken not to tender the case to you. But I don't know what follows from that in terms of this litigation. Well, Your Honor, let me also go back to the question of the, whether disclosing the policy or that she was potentially an additional insurer, and of course, that all depended on whether she was in the course and scope of employment, whether that would have made any difference. Bamberger was liable to Marotti whether she was in the course and scope of employment or not, okay? Obviously, naturally, she wanted to have some deep pockets standing next to her. And when Marsh disclosed that it had a $50 million insurance policy, Bamberger knew that if she was in the course and scope of employment and she was negligent, Marsh was going to be that deep pocket. She also knew that Mar, yes, Your Honor, she, that Marsh would be vicariously liable for her negligence if she was in the course and scope of employment. And that was the position that her lawyer took in opposition to Marsh's motion for summary judgment. No, I was furrowing about something else. Go ahead. Okay, I'm sorry. And also, of course, there's Labor Code Section 2802, whereby if she was in the course and scope of her employment, Marsh was going to have to indemnify her. So course and scope of employment was very important to Bamberger as to the Labor Code 2802 issue. And it was also very important to her with respect to the vicarious liability that Marsh would have. No question. It didn't, it didn't really make any difference whether she knew she might also potentially be an insured under national union's policy to the way she handled the case. Was that because she was already separately represented? I'm sorry, what was that? Well, it sounds like you're saying because you lucked out, because, or your client did, because she was already separately represented. Well, I wouldn't say we lucked. That would be a very different case if she hadn't been represented. I don't think we'd figure she hadn't been represented. Oh, well, it would be, it would be very different. But I don't think it's a question of lucking out, Your Honor, because there was nothing for us to do. We didn't have any duties to defend. We didn't have to appoint cumulus counsel, because you only have to appoint cumulus counsel if you do have a duty to defend. There were no settlement discussions that are in the record, so there was nothing to And there was no tender, which is your other point. And there was no tender. Is that why you had no duty to defend? No, no, the duty, we had, well, yes, that's, that's point one. Point two is that she, her primary insurer was the auto club. And under California law, it was the auto club that had the responsibility. That's the point I think I've already said, at least on my scorecard, you easily win that. Yes, right. Okay. Thank you. So, so, so far as Bamberger's concerned, she probably had lots of sleepless nights. But it wasn't because she didn't know about the National Union policy's additional insured provision. It was because she didn't know whether she was in the course and scope of employment when the accident occurred. Nobody could have told her that. And in fact, the state court trial judge ruled that she was not, which obviously meant that she was- Her argument would be so much stronger and would worry me so much less if you were taking the position that you disclosed the policy. Because once she knows about the policy, she had the ability to tender, but instead you seem to be saying if your client had to do it all over again, they wouldn't tell their potential insured that she was a potential insured. And I, I'm not sure we need to recover this ground, but I just want to clearly indicate my view of the law on that point. Well, Your Honor, I- Think of it as helpful feedback. Thank you very much. All right. And Your Honor, of course, there's always, looking back in hindsight, you can always do things differently. Sure. As indeed the company did as soon as she filed her complaint. So how is it possible that after the California Supreme Court ruled it took months for the insurance company to say, oh, we forgot about Bamberger? What happened? Well, it had, she was out of the case at that point. She had settled. So she was out of the case. No question she was insured at that point, right, as a matter of law. I mean, I don't think you're, is that right? You're not disputing that? Well, she was in the course and scope of her employment. So she's insured. And of course, the case had not actually gone to trial, but she had settled out and she had incurred- My understanding of the record is she had settled out, but it's not like she had moved away. She was right there. You were looking to have her testify. She was right in the middle of the soup. Well, in fact, in response to counsel's remark, I mean, the judge, there was evidence, I believe, in the record before the district court that Nash, I mean, Marsh, I should say, Marsh's out to Klonsky, her asset protection lawyer, about having her testify for deposition. So there was evidence that she was going to participate in this trial that now had to take place because- Right. I'm curious about, she's had different kinds of lawyers. I think asset protection means how to shield your assets from bankruptcy. But she had an ordinary personal injury defense lawyer provided by her primary insurer during her litigation. Correct. And I imagine an asset protection lawyer might not be familiar with setting insurance companies up for excess and all that sort of thing, but her primary insurer ordinarily would be. Did her primary insurer contact National Union or Marsh about contributing to the settlement? I'm not aware of any evidence to that effect in the record. And if you're talking about contributing to the settlement at the time the settlement occurred, Your Honor, my response would be at that point, National Union was certainly entitled to take the position. There was no coverage. You're relying on the Superior Court ruling. Absolutely. And that was an objectively reasonable position to take. So even if Bamberger had tendered a claim at that point, I think National Union would have been entitled to say- That would be different. That's why I put it in thirds. I think that's a really different territory once you had a ruling from the court. I agree. But the- So what's the evidence that happened at the bench trial to explain, that was introduced at the bench trial to explain how it is that her insurance company forgot about her? Well, there was testimony from the National Union representative who explained how when the California appellate courts ruled that she was in course and scope as a matter of law, that by that point, she was out of the case. She was- But I guess what I should have asked more specifically is, what's your take on it? I mean, it's kind of hard to imagine. They just forgot about her, but she's right in the middle of the case. Well, Your Honor, that comes back to what I was saying earlier about the importance of a tender. When a claimant or an insurance policy makes a claim, the insurance company responds. I know, but counsel, we get that. I mean, because we do this for a living, so we understand, but it's sort of like you're doing things internally, you know, in-house, and this is our rule. I believe in the industry. Well, I understand that, but what about all your insureds, the laypeople who are out there? How do you reconcile that with California law that says if you have reason to, no, but the insured doesn't know you have to do something? And that's why I come back to, you disclosed the policy, and if it weren't for that, I just really feel like you'd be in deep kimchi here. Well, Your Honor, I think that if there is such a duty, it would be a very disruptive duty to say to the insurance companies that you have to take it upon yourself basically to assume the role of coverage counsel for people that have never come to you, never asked you for anything. Well, Marsh has asked you, they may be paying premiums for you to cover themselves and their employees. Correct. They may be paying premiums for their employees. Well, yes, but the, but Marsh was the one who tendered the claim. She never tendered the claim. Now, you know, had things been done differently, certainly her auto club lawyer should have contacted, should have, should have asked for the policy and read it and seen the additional insured language. But apparently, so far as the record shows, that never happened. I would think he wouldn't even have to. That kind of language is always in the policy. Your Honor, I, you know, I, I hesitated to say that, but I think you're right. In these kinds of policy, because I suspect. Every auto liability policy has an omnibus clause and an other insurance clause. Right. And in, and in this, and in the, in the Marsh policy, keep in mind that under, you know, Labor Code 2802, the employer would be liable to indemnify the employee if the employee is acting in the course and scope of employment anyway. So it makes perfect sense in these policies to have additional insured clauses of this type when the employee is in fact in the course of scope. And it's hard to believe that a lawyer, the lawyer appointed by the auto club, who is, you know, obviously involved in personal injury cases all the time on the side of the defense, wasn't aware. And, and the only thing I can keep, I keep coming back to, Your Honor, is that it really wouldn't have made any difference. Because of the state of the, of the litigation at that time. Yes. Because if there were, they, everybody knew Marsh had gobs of insurance. There was going to be no excess judgment here. Counsel, your time has expired. Thank you. Thank you very much, Your Honor. Mr. Marshall, we'll give you a minute for rebuttal. If I can go through these quickly. One, Bamberger went to Marsh and she told him about the suit. They didn't do anything about it. Marsh tendered the case. And in their tender, they say, this happened by a suit, this happened when it was an employee was on their way home. So they had everything they knew, needed to know in terms of a tender, the duty to investigate it and to know the facts. Counsel, your client had a discovery response indicating that she, denying that she was acting as an agent. That is true. But the facts were the facts. She was deposed prior and at her deposition, she described in detail the circumstances in which she was required to bring her car to work. And those were the facts that were operative in this case. And Marsh had a duty to look at the facts. And they were asked to look at the facts in the tender itself that was sent to national unions. So they can't claim ignorance. More importantly, you know, this isn't a case of just nonfeasance, just failure to defend or failure to pay benefits. It's a case of actual malfeasance in the sense that they came into the case, actively intervened and took a position that was adverse to her, not only with respect to the insurance coverage, she didn't know that there was that issue, but also with respect to the labor code issue because when they won on that issue, she had no coverage under the labor code, no right to indemnity. Counsel, help me on something here. The cases that you cited for the duty to tell the insured of her rights are first party insurance with lay people. This is third party liability insurance and she really wasn't a lay person. She was represented by counsel, her personal injury defense lawyer provided by AAA, I think it was. So I don't see why those cases should be extended to a situation so different. There are, in fact, where all the need for advice as to coverage is more severe probably in liability cases under third party coverage. So you agree that the cases you cited are first party cases? Well, not all of them. I think both Ramirez and there's a case called Curtis that we cited. This was medical insurance, as I recall, and they didn't tell the lay people who were sick in the hospital that your hospital bill was covered. Those are the Supreme Court decisions, Sarchett and Chase Blue Cross cases. But there are other cases, Ramirez, which involved an auto accident, and Curtis, which was a liability case with a court of appeal. It's an older case where the court of appeal basically says, gee, you didn't even tell your insured that you were settling, that you were handling this case in which he was named as a defendant. You were hanging him out to dry. Not a good idea. Thank you, counsel. You've exceeded your time also. The case just argued is submitted. We appreciate counsel's arguments and we are adjourned.
judges: Kleinfeld, Graber, Christen